**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| E. HOWARD KING, JR., Derivatively on Behalf of HOUSTON AMERICAN ENERGY CORP., | § § § | |
| *Plaintiff*, | § § § | |
| v. | § § | |
| JOHN F. TERWILLIGER, *et al.*, | § § | CIVIL ACTION H-12-2182 |
| *Defendants*, | § § § | |
| and | § § § | |
| HOUSTON AMERICAN ENERGY CORP. | § § | |
| *Nominal Defendant*. | § | |

**ORDER**

Pending before the court is the motion to dismiss of Defendants John F. Terwilliger, John P. Boylan, Orrie Lee Tawes, III, Stephen Hartzell (collectively the "Board" or "Individual Defendants"), James J. Jacobs, Kenneth A. Jeffers (collectively the "Officer Defendants"), and Nominal Defendant Houston American Energy Corporation ("Houston American"). Dkt. 8. Upon consideration of the motion, the response, the reply, the complaint, and the applicable law, the motion is GRANTED. Plaintiff is granted leave to replead his complaint within 30 days of the date of this order to comply with the below-discussed pleading standards.

**BACKGROUND**

In this shareholder derivative suit, E. Howard King, Jr. ("King") brings causes of action for (1) breach of fiduciary duty against the Individual Defendants; (2) Waste of Corporate Assets against the Individual Defendants; and (3) Unjust Enrichment against the Individual Defendants and the

Officer Defendants stemming from the June 11, 2012 Board decision to approve the following: (a) Change of Control Agreement; (b) stock option grants to Terwilliger and the Officer Defendants; (c) salary increases to Terwilliger and the Officer Defendants; and (d) cash bonuses for Terwilliger. Dkt. 1.  According to the allegations in the complaint, which the court accepts as true for the purposes of a motion to dismiss, *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982), the facts are as follows:

Houston American is a Delaware Corporation described as an independent oil and gas company focusing on natural gas and crude oil properties in the U.S. Gulf Coast area and South America—especially Colombia.  Houston American's shares are traded on the NYSE AMEX.  The Board or Individual Defendants consist of John F. Terwilliger, John P. Boylan, Orrie Lee Tawes, III, and Stephen Hartzell. Terwilliger is Houston American's Chairman, CEO, President, and director and has been since the company was founded in 2001.  He is the beneficial owner of 27.5% of the company's outstanding common shares.  Boylan has been a director of the company since 2006.  He is the Chairman of the Compensation Committee and the Audit Committee.  Tawes has been a director since 2005.  He owns 9.7% of the company's outstanding common shares.  Hartzell has been a director since 2005.  He is a member of the Compensation and Audit Committees.  Board member Kenneth Grimes is not named as a defendant in this suit.  The Officer Defendants consist of James J. Jacobs—the company's CFO since 2006, and Kenneth A. Jeffers—the company's Senior Vice President of Exploration since August 2010.

Currently pending in another court in the Southern District of Texas is a federal securities shareholder class action against these defendants, plus some defendents not present in this suit, for alleged violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934, and Securities Exchange Commission Rule 10b-5, based primarily on a series of statements that the plaintiffs claim

were materially misleading. *See In re Houston American Energy Corporation Securities Litigation*, Civ. No. 12-1332, S.D. Tex (hereinafter "*In re HUSA*").  While the allegations in that suit do not form the basis of the claims in this suit, they serve as context for the plaintiff's arguments regarding the allegedly wasteful actions taken by the defendants in breach of their various duties.  The court, therefore, includes these facts—although in a less detailed exposition—for context.

Defendants allegedly issued materially false statements during the class period in the *In re HUSA* litigation from March 29, 2010 through April 18, 2012.  The statements consisted of the company's periodic financial reporting through press releases and the company's SEC filings.  Additionally, the company issued press releases regarding the progress of drilling at the Tamandua #1 well in Colombia.  The company reported a series of set-backs on the Tamandua #1 and finally on February 29, 2012, plaintiff alleges the company admitted the well "likely was a bust."  As a result, the company's stock price dropped from $10.84 per share at close on February 29, 2012 to $7.00 per share at close on March 1, 2012.  Additionally, the company's SEC Form 10-K for 2011 revealed that for 2011, the company suffered a net loss of $4.3 million and revenue of $1.2 million, down from 2010 when the company reported a net income of $21 million and revenue of $19.5 million.

In mid-March 2012, bankruptcy rumors began to circulate, which were refuted by the company.  In April 2012, the company ceased operations on the Tamandua #1 well.  Also, in April, the company announced that it was under investigation by the SEC.  By April 18, 2012, the company's stock closed at $2.25 per share.

On June 11, 2012, the stock price opened at $1.67 per share.  According to the company's SEC Form 8-K, filed on June 14, 2012, on June 11, 2012, the Board met and approved the following:

1.      Change of Control Agreements for Terwilliger, Jacobs, and Jeffers, which promised that should any of the three be terminated without cause or resign for good reason within 90 days prior or 1 year following a change of control, they would receive a lump sum payment equal to 250% of their annual salary and bonuses and all unvested time-based stock options would be accelerated.

2.      Stock Option Grants which granted stock options exercisable for a term of 10 years at an exercise price of $1.65 per share.  The Board granted Terwilliger 600,000 shares and granted Jacobs and Jeffers each 300,000 shares.  Some portion of those shares would not be exercisable until the company's shareholders approved an amendment to the company's equity incentive plan.

3.      Salary Adjustments and Cash Bonuses.  The Board approved raises for the three executive officers: Terwilliger received a 5% raise to $382,016; Jeffers received a 5% raise to $264,600; and Jacobs received a 15% raise to $219,161.  Additionally, each executive received a bonus equal to 50% of their 2011 base salaries, or $181,912, $126,000, and $95,287 respectively.

Not only did the Board approve increased compensation for the executive officers of the company, it also granted increased compensation to its non-employee directors–Boylan, Hartzell, and Tawes—in the form of increased cash compensation and stock options.  The cash compensation increased by 50% to a $9,000 annual retainer, $3,000 for service on a committee, $3,750 for service as chair of the audit committee, and $2,250 for service of the chair of the compensation committee.  The stock options—10 year term, exercisable at $1.65 per share—consisted of a grant of 25,000 shares each consistent with the compensation program already in place, and an extraordinary grant of 75,000 shares each on basically the same terms, pending approval by the shareholders.

On June 27, 2012, the Board received a warning letter from the NYSE AMEX that the company was not in compliance with the listing standards, specifically the rule that required at least a majority of independent directors and at least three members on the audit committee.  According

to the company, independent director Richard Howe resigned from the Board effective May 24, 2012. The company cured the deficiency by appointing independent director Kenneth Grimes to the Board and the audit committee effective July 2, 2012. Notably, on June 11, 2012 when the Board approved the Change of Control Agreements, raises, stock options, and bonuses the Board consisted of 4 members: Boylan and Hartzell, who were designated as independent directors, and Terwilliger and Tawes, who were not so designated.

Plaintiff further alleges that the June 11, 2012 Board actions were in direct conflict with the company's compensation policies, which stated that (1) success would be measured in terms of return on investment; (2) to control costs the company operates with a minimal staff—principally the Officer Defendants; and (3) proven performance would be rewarded with discretionary cash bonuses.

On July 19, 2012, plaintiff filed suit in this case alleging that in light of the company's dismal performance in 2011—drilling failures, plummeting stock prices, SEC investigation, and bankruptcy rumors—the Board's decision to implement the Change of Control Agreements, and grant raises, stock options, and bonuses—constituted a breach of the Individual Defendants' fiduciary duties, waste of corporate assets by the Individual Defendants, and Unjust Enrichment of all defendants. Defendants now move this court to dismiss.

LEGAL STANDARDS

**1.      Rule 12(b)(6)**

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964–65 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99 (1957)). In

considering a 12(b)(6) motion to dismiss a complaint, courts generally must accept the factual

allegations contained in the complaint as true. *Kaiser Alum.*, 677 F.2d at 1050.  The court does not

look beyond the face of the pleadings in determining whether the plaintiff has stated a claim under

Rule 12(b)(6). *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).  "[A] complaint attacked by

a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [but] a plaintiff's

obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*,

127 S. Ct. at 1964–65 (citing *Sanjuan v. Am. Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247,

251 (7th Cir. 1994)) (internal citations omitted).  And, "[f]actual allegations must be enough to raise

a right to relief above the speculative level." *Twombly*, 127 S. Ct. at 1965.  The supporting facts

must be plausible—enough to raise a reasonable expectation that discovery will reveal further

supporting evidence. *Id.* at 1959.

**2.      Rule 23.1(b)**

In derivative actions, Federal Rule of Civil Procedure 23.1(b) imposes a higher pleading

standard than Rule 8.  Rule 23.1(b) requires that

The complaint must be verified and must:

> (1) allege that the plaintiff was a shareholder or member at the time of the transaction complained of, or that the plaintiff's share or membership later devolved on it by operation of law;
>
> (2) allege that the action is not a collusive one to confer jurisdiction that the court would otherwise lack; and
>
> (3) state with particularity:
>
>> (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and

(B) the reasons for not obtaining the action or not making the effort.

FED. R. CIV. P. 23.1(b).  "Because Federal Rule of Civil Procedure 23.1 does not identify applicable substantive standards, the particularity of a plaintiff's pleadings is governed by the standards of the state of incorporation, here, Delaware."  *Freuler v. Parker*, 803 F. Supp. 2d 630, 636 (S.D. Tex. 2011).

**3.      Demand Futility under Delaware Law**

Under Delaware law, the decision to pursue a lawsuit on behalf of the corporation is left to the board of directors, recognizing that "directors, rather than shareholders, manage the business and affairs of the corporation."  *In re Citigroup Inc. Sharholder Deriv. Litig.*, 964 A.2d 106, 120 (Del.Ch. 2009) (internal quotation omitted).  "[T]he right of a stockholder to prosecute a derivative suit is limited to situations where the stockholder has demanded that the directors pursue the corporate claim and they have wrongfully refused to do so or where demand is excused because the directors are incapable of making an impartial decision regarding such litigation."  *Rales v. Blasband*, 634 A.2d 927, 932 (Del. 1993).  Where, as here, the plaintiff is arguing that the required demand would be futile, the courts must ask "whether, under the particularized facts alleged, a reasonable doubt is created that: (1) the directors are disinterested and independent; [or] (2) the challenged transaction was otherwise the product of a valid exercise of business judgment."  *Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984).  The burden rests on the plaintiff to show that demand upon the board of directors at the time of the filing of the complaint would be futile.  *In re INFOUSA, Inc. Shareholder Litig.*, 953 A.2d 963, 985 (Del. Ch. 2007).

To be disinterested a majority of "directors can neither appear on both sides of a transaction nor expect to derive any personal financial benefit from it in the sense of self-dealing, as opposed

to a benefit which devolves upon the corporation or all stockholders generally." *Aronson*, 919 A.2d at 812. "It should be noted, however, that in the absence of self-dealing, it is not enough to establish the interest of a director by alleging that he received any benefit not equally shared by the stockholders." *Orman v. Cullman*, 794 A.2d 5, 23 (Del. Ch. 2002). "Such benefit must be alleged to be material to that director." *Id.* (citing *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 363 (Del. 1993)). "Materiality means that the alleged benefit was significant enough 'in the context of the director's economic circumstances, as to have made it improbable that the director could perform her fiduciary duties to the . . . shareholders without being influenced by her overriding personal interest.'" *Id.* (quoting *In re Gen. Motors Class H Shareholders Litig.*, 734 A.2d 611, 617 (Del. Ch. 1999)). "Mere recitations of elephantine compensation packages and executive perquisites, . . ., will rarely be enough to excuse a derivative plaintiff from the obligation to make demand upon a defendant board of directors." *In re INFOUSA*, 953 A.2d at 983 ("Successful derivative plaintiffs, however, must focus intensely upon individual director's conflicts of interest or particular transactions that are beyond the bounds of business judgment.").

"Independence means that a director's decision is based on the corporate merits of the subject before the board rather than extraneous considerations or influences." *Aronson*, 919 A.2d at 816. "A plaintiff may . . . challenge a director's independence by putting forward allegations that raise a reasonable inference that a given director is dominated through a 'close personal or familial relationship or through force of will,' or is so beholden to an interested director that his or her 'discretion would be sterilized.'" *In re INFOUSA*, 953 A.2d at 985 (quoting *Orman*, 794 A.2d at 25 n. 50, and *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1050 (Del. 2004) respectively). "To demonstrate that a given director is beholden to a dominant director, plaintiffs must show that the beholden director receives a benefit 'upon which the director is so

dependent or is of such subjective material importance that its threatened loss might create a reason to question whether the director is able to consider the corporate merits of the challenged transaction objectively.'" *Id.* (quoting *Telxon Corp. v. Meyerson*, 802 A.2d 257, 264 (Del. 2002)).

The second prong of *Aronson* requires a plaintiff to demonstrate a reasonable doubt that "the challenged transaction was otherwise the product of a valid exercise of business judgment." *Aronson*, 473 A.2d at 812.  The business judgment rule "is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Id.*  To show that demand was futile under the second prong, the plaintiff must plead particularized facts to demonstrate that the directors breached their duty "to inform themselves prior to making a business decision, of all material information reasonably available to them." *Id.*  "Having become so informed, they must then act with requisite care in the discharge of their duties." *Id.*

"[A]bsent particularized allegations to the contrary, the directors are presumed to have acted on an informed basis and in the honest belief that their decisions were in furtherance of the best interests of the corporation and its shareholders." *Khanna v. McMinn*, 2006 WL 1388744, at *23 (Del. Ch. 2006).  "It is not an easy task to allege that a decision falls outside the realm of the business judgment rule because '[t]his Court will not second-guess the judgment of a board of directors if it bases its decision on a rational business purpose.'" *Id.* (quoting *Kahn v. Roberts*, 1995 WL 745056, at *4 (Del. Ch. 1995)).  "Thus, '[t]he burden is on the party challenging the decision to establish facts rebutting the presumption.'" *Id.* (quoting *Aronson*, 473 A.2d at 812).

ANALYSIS

The *Aronson* test is disjunctive. So, the court addresses each prong in turn.

**1.      Was a Majority of Directors Disinterested and Independent?**

The current board consists of five directors: Grimes, Terwilliger, Tawes, Boylan, and Hartzell.   In order for demand to be excused on this first prong, plaintiff must have plead particularized facts to demonstrate that three of the five are interested parties or are not independent. *See In re INFOUSA*, 953 A.2d at 985.   As a threshold matter, plaintiff makes no allegations regarding Hartzell, or regarding Grimes—who is not a defendant in this case.  Accordingly, plaintiff must show that all three remaining directors are interested and/or lack independence.  Even assuming arguendo that plaintiff met his burden with respect to Terwilliger and Boylan—a finding this court does not make—he has failed to make any showing that Tawes lacks independence or has a financial interest.  In his complaint, plaintiff alleges that Tawes is not independent because he was not so designated in the company Proxy.  However, the defendants argue that a lack of a designation as independent does not amount to an affirmative admission of the converse.  The court agrees. Plaintiff must allege particularized facts to demonstrate affirmatively that Tawes is not independent. He has failed to do so. Plaintiff also argues that Tawes has an interest because the non-employee directors received an increase in compensation and extraordinary stock options as a part of the contested board decision.  However, as explained above, absent some concrete factual allegations of self-dealing or some showing that the compensation and stock options were material to Tawes, plaintiff's unsupported conclusion that Tawes had an interest will not suffice.  Therefore, plaintiff has not made his showing with regard to a majority of the Board as required under the first prong of *Aronson*.

**2.      Were the actions of the Board a valid exercise of business judgment?**

For the second prong of *Aronson*, the court is required to examine each claim to determine whether plaintiff has alleged facts sufficient to render demand futile because the Board's actions fall outside the business judgment rule. *Aronson*, 473 A.2d at 814. Plaintiff makes only one conclusory statement regarding the second prong of *Aronson*. He argues that no reasonable Board could have approved the Change in Control Agreements, raises, bonuses, and stock options in light of the dismal company record over the previous year. This argument fails because, as one Delaware court points out, to allow it would eviscerate the business judgment rule.

> In most derivative suits claiming waste, excessive executive or director compensation, or harm from other self-interested transactions, a plaintiff will argue that the board's decision to allow a transaction was a violation of its fiduciary duties. If the plaintiff can then avoid the demand requirement by reasoning that any board that would approve such a transaction . . . is by definition unfit to consider demand, then in few (if any) such suits will demand ever be required. This does not comport with the demand requirement's justification as a bulwark to protect the managerial discretion of directors.

*Id.* at 989. However, even taking all of the plaintiff's factual allegations into account, he still falls far short of demonstrating that the directors failed to avail themselves of all material information or that their actions were grossly negligent. In essence, he asks this court to determine the wisdom of the Board's compensation decisions—precisely the type of decision that courts should not second-guess. *Id.* at 983 ("The acumen of the business executive, the competitive environment in the industry, and the recruitment and retention challenges faced by the hiring corporation all bear heavily on an appropriate level of compensation. 'How much is too much?' is a question far better suited to the boardroom than the courtroom."). Therefore, plaintiff has not met his burden to demonstrate with particularity a reasonable doubt that the Board's actions were a valid exercise of business judgment. Accordingly, the court determines that demand was not futile in this case.

## CONCLUSION

Pending before the court is defendants' motion to dismiss.  Dkt. 8.  For the reasons described above, the motion is GRANTED.  However, in the Fifth Circuit "district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Grt. Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).  Therefore, the plaintiff is given LEAVE TO AMEND his complaint within 30 days of the date of this order to comply with Rule 23.1(b)'s pleading standards to demonstrate demand futility under *Aronson*.

It is so ORDERED.

Signed at Houston, Texas on February 26, 2013.

_____
Gray H. Miller
United States District Judge